UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MIB, LLC, RYAN POLOKOFF, and SABINE KISSEE, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| MIKE FIELD, DAVE BURTNER, JIM HANLON, DAN Mac INNIS, and LAUREN WAHL, individually, and in their official capacities as Members of the Board of Zoning Appeals for the City of Noblesville, Indiana, | )<br>)<br>)<br>)<br>)  CASE NO. 1:23-cv-1<br>)<br>)<br>) |
| and | )<br>) |
| CALEB GUTSCHALL, individually, and in his official capacity as Director, Department of Planning and Development, City of Noblesville, Indiana, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**COMPLAINT FOR TEMPORAY RETRAINING ORDER, INJUNCTION AND DAMAGES, AND DEMAND FOR JURY TRIAL**

Plaintiffs MIB, LLC ("MIB"), Ryan Polokoff ("Polokoff"), and Sabine Kissee ("Kissee")(collectively, "MIB"), by counsel, files their Complaint for Temporary Restraining Order, Injunction and Damages, and Demand for Jury Trial against Defendants Mike Field ("Field"), Dave Burtner ("Burtner"), Jim Hanlon ("Hanlon"), Dan MacInnis ("MacInnes"), and Lauren Wahl ("Whal"), individually, and in their official capacities as Members of the Board of Zoning Appeals ("BZA") for the City of Noblesville, Indiana ("City"), and Caleb Gutshall ("Gutshall"), individually, and in his official capacity as Director of Planning and Development for the City, for depriving MIB of rights secured under the Constitution and laws of the United

States under color of state law, pursuant to 42 U.S.C. § 1983.

## I. Parties, Jurisdiction and Venue

1. MIB, LLC is an Indiana Limited Liability Company, which at all times relevant to this action, has maintained its business premises and conducted business in Noblesville, Indiana, within the geographical boundaries of the Southern District of Indiana.

2. Polokoff is a Member of MIB, LLC.

3. Kissee is a Member of MIB, LLC.

4. Defendant Field has, at all times relevant to this action, been a member and Chairman of the BZA.

5. Defendant Burtner has, at all times relevant to this action, been a member and Vice Chairman of the BZA.

6. Defendant Hanlon has, at all times relevant to this action, been a member of the BZA.

7. Defendant MacInnis has, at all times relevant to this action, been a member of the BZA.

8. Defendant Wahl has, at all times relevant to this action, been a member of the BZA.

9. Defendant Gutshall has, at all times relevant to this action, been the Director of Planning and Zoning for the City.

10. The BZA is an official agency of the City, and derives its authority from Ind. Code 36-7-4-901, *et seq.*

11. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), and 42 U.S.C. § 1983.

12. All events giving rise to this action occurred in within the geographic boundaries of the Southern District of Indiana, making venue proper in this Court.

## II. Factual Allegations

A. **MIB's Business and Products.**

13. MIB began operations on November 3, 2020.

14. At all times relevant to this Complaint, MIB has operated its business from leased space at 15480 Herriman Boulevard, in the City.

15. MIB is a retail and internet-based business that sells primarily adult diapers and related incontinence supplies, such as adult sized changing pads.

16. In addition, MIB sells adult-sized "onesies," baby bottles, rattles and other baby toys.

17. MIB's adult diapers and incontinence supplies are FDA-regulated medical products, which are marketed in hundreds of drug stores, grocery stores and other retail establishments throughout the United States.

18. MIB is regulated by the FDA under Registration Number 3017502646.

19. *None* of the products MIB sells are "sexually-oriented" in and of themselves.

20. MIB uses a number of hashtags on its social media and marketing posts, including #CGL, #ddlg, and #AB/DL.

21. None of the hashtags MIB uses are obscene, or constitute unprotected speech in any form, nor does MIB use *any* advertising which refers in any way to sex, or sexual activities.

B. **The BZA Decides MIB is a sex shop.**

22. On or about April 26, 2022, MIB received a Letter of Determination from Gutshall, stating that the City had determined that MIB was in violation of two (2) definitions

found in Article 2 of the Noblesville Unified Development Ordinances ("UDO"); specifically stating that MIB was a sex shop, selling sexually oriented toys and/or novelties ("Determination").

23.     On May 27, 2022, MIB filed an appeal of the Determination, stating and providing evidence that MIB is not a sex shop, nor does it promote or sell sexually oriented toys and/or novelties.

24.     On August 1, 2022, the BZA held a public meeting on MIB's appeal of the Determination.

25.     The BZA received evidence from Denise Aschleman, the City's Senior Planner, and Beth Copeland, City Attorney, and from MIB.

26.     The BZA also received testimony from one of MIB's suppliers, and from several remonstrators.

27.     Following the public meeting, the BZA issued the following "Facts and Conclusions":

- My Inner Baby self-markets as an ABDL store.

- My Inner Baby uses a number of hashtags on social media and marketing posts that target individuals who knowingly look for adult baby products to use for sexual gratification. These hashtags include #CGL (Care Giver/Little), #ddlg (Daddy Dom/Little Girl), and #AB/DL (Adult Baby/Diaper Lover).

- My Inner Baby is identified as an ABDL store including by the_abdl_map which notes that it is proud of its recognition in Hustler Magazine, a monthly pornographic magazine.

- A well-respected, highly-trained neighboring organization with professionals trained in assisting sexual exploitation victims and can recognize warning signs or sexually exploitive behavior provided additional persuasive

information.

- Advertising, marketing, and social media sites are targeting the ABDL (Adult Baby Diaper Lovers) group.
- My Inner Baby is listed on the web as part of other websites noting their merchandise for the ABDL lifestyle.
- ABDL is an internet community of persons that use diapers and display infantile behaviors out of psychological reasons and in order to achieve sexual satisfaction.
- The information presented by the Cherish Center and Janet Ditslear showed that this lifestyle fits the definition of paraphilia.
- Paraphilias are persistent and recurrent sexual interests, urges, fantasies, or behaviors of marked intensity involving objects, activities, or even situations that are atypical in nature.

28. On August 8, 2022, Gutshall informed MIB that its appeal had been denied.

29. Gutshall's letter stated that "[t]he Director of Planning and Development [i.e., Gutshall] made the determination that the proposed use would fall under the Sex Shop land use classification . . . . based upon the definition of 'Sex Shop' included in [the UDO]."

30. Gutshall also stated that the determination was based on "the following additional facts":

- Representatives from the City of Noblesville found a number of hashtags included on media and marketing posts that are targeting certain fetish groups. These include CGL (Care Giver/Little), ddlg (Daddy Dom/Little Girl), and AB/DL (Adult Baby/Diaper Lover).
- Neighboring organization with professionals trained in assisting sexual exploitation victims and recognizing warning signs or sexually exploitative behavior have provided information and perspective solidifying the conclusions reached by the Director.
- Advertising, marketing, and social media sites are targeting the ABDL (Adult Baby/Diaper Lovers) group.

- My Inner Baby is listed on the web as part of other websites noting their merchandise for the ABDL lifestyle.

- The ABDL is an internet community of persons that use diapers and display infantile behaviors out of psychological reasons and in order to achieve sexual satisfaction.

- The information presented by Cherish Center and Janet Ditslear show that this is fits (sic) the definition of paraphilia.

- Paraphilias are persistent and recurrent sexual interests, urges, fantasies, or behaviors of marked intensity involving objects, activities, or even situations that are atypical in nature.

31. The Defendants shut down MIB's retail and internet business based on the allegation that MIB was a "sex shop."

32. The City sent a determination via e-mail to counsel for MIB stating that e-commerce is also not permitted to take place at the address included in the zoning enforcement, thereby prohibiting the interstate commerce activities of the business to continue.

33. Because MIB is identified on *third-parties'* sexually-oriented social media as a #CGL, #dd/lg, or #ABDL purveyor, Defendants labeled MIB's products as "sexually-oriented toys or novelties" designed or marketed "*primarily* for use to stimulate human genital organs."

34. That allegation is based entirely on MIB's use of certain hashtags in its internet marketing, including #CGL (Care Giver/Little), #ddlg (Daddy Dom/Little Girl), and #ABDL (Adult Baby/Diaper Lover).

C. **MIB Appeals the BZA Decision.**

35. The day after receiving Gutshall's letter, MIB filed a Verified Petition for Judicial Review, as well as a Verified Petition for Stay of Decision Pending Appeal.

36. On September 10, 2022, the Court denied MIB's request for a stay, and directed the parties to agree on an expedited briefing schedule.

37. On August 24, 2022, the BZA's counsel informed MIB that the certified record would be "available in short order."

38. BZA's counsel gave *no* indication the record would not be available before September 8, 2022.

39. Having not received the certified copy of the record, MIB filed the certified transcript of the August 1, hearing on September 9, 2022.

40. On September 9, 2022, the BZA moved to dismiss MIB's Petition for Judicial Review, and vacate the scheduled hearing on the grounds that MIB had not yet filed a copy of the hearing record, pursuant to Ind. Code 36-7-4-1613(a).

41. The Court dismissed MIB's Petition for Judicial Review on October 10, 2022.

42. Although MIB is allowed to use its current facilities to warehouse its products, since October 10, 2022, it has been prohibited from operating *either* its retail *or* its internet business from the facility.

### III. Legal Allegations

#### A. Temporary Restraining Order and Preliminary Injunction

43. MIB restate each and every allegation in the foregoing paragraphs as though fully set forth herein.

44. MIB shows herein a reasonable likelihood of success on the merits.

45. The Defendants' actions have shut down MIB's retail business at the beginning of the Christmas buying, which would normally constitute a very substantial portion of MIB's total yearly sales.

46. If MIB's retail and e-commerce business remain shut down through the entire Christmas buying season, the company will be unable to recoup the lost revenue in a timely manner.

47. The lost revenue may likely force MIB out of business altogether.

48. IF MIB is forced out of business until this matter is resolved, MIB would suffer irreparable harm.

49. Time is of the essence to prevent MIB from suffering irreparable harm.

50. Moreover, the threatened injury to the MIB outweighs any potential harm to the Defendants, given that MIB had already operated from its existing location for almost two years before the Defendants' actions.

51. MIB' request for an injunction is not adverse to the public interest.

WHEREFORE, Plaintiffs MIB, Polokoff, and Kissee, by counsel, respectfully request the Court to:

    a. Issue an *immediate* *ex parte* Temporary Restraining Order;

    b. Set this matter for a hearing to extend the Temporary Restraining Order within ten days;

    c. To set an expedited discovery and briefing schedule; and

    d. To consolidate the hearing on a Preliminary Injunction with a trial on the merits.

### B. Federal Causes of Action

### Count One: Deprivation of Rights Under Color of State Law (1st Amendment) by All Defendants

52. MIB restates each and every allegation in the foregoing paragraphs as though fully set forth herein.

53. The BZA shut down MIB's retail and internet business based on the hashtags MIB used in its marketing, and the fact that MIB was mentioned on third-party social media posts.

54. The Defendants' actions deprived MIB of its right to freedom of speech, as guaranteed by the First Amendment.

55. The Defendants' actions were taken under color of state law, in that, at the time of the actions, the Defendants were members and/or employees of the BZA.

56. The Defendants' actions were intentional, willful, and in reckless disregard for MIB's rights.

57. As a result of Defendants' unlawful actions, MIB suffered, and continues to suffer, damages, including but not limited to, loss of business opportunity and revenues, damage to the personal and professional reputations of Polokoff and Kissee, damage to the business reputation of MIB, emotional distress, humiliation, embarrassment, and legal expenses.

### Count Two: Deprivation of Rights Under Color of State Law (Equal Protection) by All Defendants

58. MIB restates each and every allegation in the foregoing paragraphs as though fully set forth herein.

59. Defendants classified MIB as a sex shop based on a claim that MIB's adult diapers and other adult-sized baby clothes are designed and manufactured primarily for use to stimulate human genitals, based only on their marketing to adults.

60. Victoria's Secret, and other retailers of lingerie or other products that are ***primarily designed and marketed*** for the stimulation of human genital organs, similarly market their products to adults, but are *not* classified as "sex shops."

61. By classifying MIB as a "sex shop" based on MIB's advertisement of adult diapers and

adult-sized baby clothes to adults, while not similarly labeling Victoria's Secret and other lingerie retailers as "sex shops," Defendants deprived MIB of its right to due process, as guaranteed by the Fourteenth Amendment.

62. The actions of the City in classifying MIB as a "sex shop" were intentional and treat MIB differently from other retailers that are similarly situated without any rational basis for the difference in treatment.

63. The Defendants' actions were taken under color of state law.

64. The actions of the Defendants were intentional, willful, and in reckless disregard for MIB's rights.

65. As a result of the Defendants' unlawful actions, MIB suffered, and continues to suffer, damages, including but not limited to, loss of business opportunity and revenues, damage to the personal and professional reputations of Polokoff and Kissee, damage to the business reputation of MIB, emotional distress, humiliation, embarrassment, and legal expenses.

### Count Three: Deprivation of Rights Under Color of State Law
### (Due Process) by All Defendants

66. MIB restates each and every allegation in the foregoing paragraphs as though fully set forth herein.

67. MIB's internet e-commerce operations constitute a "distribution facility" as that term is defined by the UDO.

68. A distribution facility is a permitted use in the I-1 zoning district where MIB is located.

69. Defendants deprived the MIB of its right to due process, as guaranteed by the Fifth and Fourteenth Amendments by shutting down MIB's e-commerce business without notice.

70. The Defendants' actions were taken under color of state law.

71. The actions of the Defendants were intentional, willful, and in reckless disregard for MIB' rights, treating MIB differently from other retailers and establishments similarly situated in the City.

72. As a result of the Defendants' unlawful actions, MIB suffered, and continues to suffer, damages, including but not limited to, loss of business opportunity and revenues, damage to the personal and professional reputations of Polokoff and Kissee, damage to the business reputation of MIB, emotional distress, humiliation, embarrassment, and legal expenses.

### Count Four: Deprivation of Rights Under Color of State Law (Commerce Clause) by All Defendants

73. MIB restates each and every allegation in the foregoing paragraphs as though fully set forth herein.

74. Defendants decision to include e-commerce in a zoning prohibition is a prima facia violation of the Commerce Clause protections provided under the Constitution that apply to MIB.

75. Defendants ability to craft zoning regulations for the City do not include the ability to prohibit interstate commerce.

76. Defendants are required to notify MIB that conducting e-commerce at the address cited for a brick and mortar store constitutes a violation of the zoning ordinances.

77. Defendants did not notify MIB of any such violation and are therefore prohibiting e-commerce without notice, opportunity for hearing, and in violation of the Commerce Clause.

78. The Defendants' actions were taken under color of state law.

79. The actions of the Defendants were intentional, willful, and in reckless disregard for MIB's rights.

80. As a result of the Defendants' unlawful actions, MIB suffered, and continues to suffer, damages, including but not limited to, loss of business opportunity and revenues, damage to the personal and professional reputations of Polokoff and Kissee, damage to the business reputation of MIB, emotional distress, humiliation, embarrassment, and legal expenses.

**Count Five: Deprivation of Rights Under Color of State Law**
**(Ultra Vires Actions) by all Defendants**

81. MIB restates each and every allegation in the foregoing paragraphs as though fully set forth herein.

82. Defendants decision to create language to make MIB fit into a definition is a clear violation of the language of the Ordinance guiding the actions of the Defendants.

83. By creating an interpretation that does not exist in the written Ordinance, and expanding the plain language of the Ordinance to make MIB "fit" into a specific category ("sex shop"), the City is intentionally treating MIB differently from other retailers or distributors that are similarly situated within the City.

84. The Defendants' actions were taken under color of state law.

85. The actions of the Defendants were intentional, willful, and in reckless disregard for MIB's rights.

86. As a result of the Defendants' unlawful actions, MIB suffered, and continues to suffer, damages, including but not limited to, loss of business opportunity and revenues, damage to the personal and professional reputations of Polokoff and Kissee, damage to the business reputation of MIB, emotional distress, humiliation, embarrassment, and legal expenses.

**Count Six: Governmental Liability  (42 U.S.C. § 1983)**

87. MIB restates each and every allegation in the foregoing paragraphs as though fully set forth herein.

88. The Defendants' actions were taken pursuant to the UDO, which constitutes a policy of Defendants.

89. Defendants' policy directly resulted in depriving MIB of their rights.

90. As a result of the deprivation, MIB suffered, and continues to suffer, damages, including but not limited to, loss of business opportunity and revenues, damage to the personal and professional reputations of Polokoff and Kissee, damage to the business reputation of MIB, emotional distress, humiliation, embarrassment, and legal expenses.

## IV. Relief Requested

WHEREFORE, MIB, Polokoff, and Kissee, by counsel, ask the Court to return a verdict in their favor, and against the Defendants, on all counts, and to provide the MIB with the following relief:

91. Order the Defendants, jointly and severally, to pay MIB's actual damages, including but not limited to all of MIB's lost revenues;

92. Order the Defendants, jointly and severally, to pay MIB compensatory damages for the emotional distress, humiliation, embarrassment, and damage to reputation caused by Defendants' actions;

93. Order the individual Defendants, jointly and severally, to pay MIB punitive damages for their willful, reckless and malicious actions;

94. Order the Defendants, jointly and severally, to pay MIB pre- and post-judgment interest on all sums awarded;

95.     Order the Defendants, jointly and severally, to pay MIB's reasonable attorney fees and costs of litigating this action.

96.     Order the Defendants, jointly and severally, be ordered to provide any and all other relief to which MIB may be entitled.

### V.  Demand for Jury Trial

MIB, by counsel, demands a trial by jury on all issues so triable.

Respectfully submitted,

*s/ Jay Meisenhelder*
Jay Meisenhelder, Atty No. 19996-49
JAY MEISENHELDER EMPLOYMENT
& CIVIL RIGHTS LEGAL SERVICES, P.C.
650 North Girls School Road, Suite D40
Indianapolis, IN  46214
Office Telephone:    317/231-5193
Direct Telephone:    317/899-9220
Facsimile Number:    317/982-5463
Email Address:       jaym@ecrls.com